People v Bonilla (2022 NY Slip Op 07304)

People v Bonilla

2022 NY Slip Op 07304

Decided on December 22, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 22, 2022

Before: Kapnick, J.P., Mazzarelli, Friedman, Shulman, Rodriguez, JJ. 

Ind No. 2567N/15 Appeal No. 16545 Case No. 2017-1280 

[*1]The People of the State of New York, Respondent,
v
James Bonilla, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (Paul Wiener of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (David Gagne of counsel), for respondent.

Judgment, Supreme Court, New York County (Michael R. Sonberg, J. at motions; Patricia M. NuÑez, J. at plea and sentencing), rendered April 21, 2016, convicting defendant of criminal possession of a controlled substance in the third degree, and sentencing him to 3 years' probation, reversed, on the law, the judgment and the denial of the motion to controvert the search warrant vacated, and the matter remanded for further proceedings on that motion.
Defendant did not validly waive his right to appeal "because the court did not make clear that the right to appeal is separate and distinct from the numerous other trial rights automatically forfeited upon pleading guilty" (People v Ellis, 194 AD3d 428, 428 [1st Dept 2021], lv denied 37 NY3d 964 [2021]). Specifically, the court conflated defendant's appellate and trial rights by asking the defendant "[i]s that what you wish to do to waive your right to appeal and your other rights . . . by pleading guilty[?]" Instead, the majority of the court's colloquy of defendant's appellate rights focused on sentencing, on which the court itself needed clarification, not in differentiating trial from appellate rights.
Moreover, the court made other errors in its oral colloquy that further justify invalidating defendant's waiver of his appellate rights. Specifically, the court failed to advise defendant of the nature of the right to appeal (People v Lopez, 6 NY3d 248, 257 [2006]; People v Harris, 137 AD3d 514, 514 [1st Dept 2016], lv denied 27 NY3d 1070 [2016] ["the Court never advised defendant of the consequences of the appeal waiver, or spoke to defendant to ensure he understood the rights he was forfeiting"]), erroneously mischaracterized the finality of the waiver (People v Thomas, 34 NY3d 545, 554-556, 565-566 [2019], cert denied 589 US &mdash, 140 S Ct 2634 [2020]), and failed to discuss the written waiver form with defendant (People v Acosta, 133 AD3d 506, 507 [1st Dept 2015] [invalidating an appellate waiver due to court's failure to establish that the defendant signed it and was aware of its contents]; cf. People v Bryant, 28 NY3d 1094, 1096 [2016] [affirming appellate waiver partially due to trial court's separate advisement to the defendant on the written waiver form]; Harris, 137 AD3d at 514). The detailed written waiver that defendant executed with counsel cannot save the numerous errors in the court's oral colloquy, as "'a written waiver is not a complete substitute for an on-the-record explanation of the nature of the right to appeal'" (People v Oquendo, 105 AD3d 447, 448 [1st Dept 2013], lv denied 21 NY3d 1007 [2013], quoting People v Bradshaw, 76 AD3d 566, 569 [2d Dept 2010], affd 18 NY3d 257 [2011]).
We agree that one must look at the totality of the circumstances to determine whether defendant's waiver of appellate rights was knowing, intelligent and voluntary and that there is no requirement for a court to pose a mandatory, minimal litany of questions to ensure the validity of such a waiver. Nonetheless[*2], we must also be mindful that for a defendant, "[g]iving up the right to appeal is not a perfunctory step" (Lopez, 6 NY3d at 256). The dissent asserts that our analysis of the plea allocution is narrowly focused. It is not. We are engaging in the holistic test outlined in Thomas (34 NY3d at 559). Under such analysis, we have recently invalidated a waiver of appeal, despite the defendant signing a virtually identical written waiver form as here, where "[t]he court did not confirm that defendant understood the written waiver, that he had discussed the waiver with his counsel, or even that he had read it" (People v Thorne, 207 AD3d 73, 77 [1st Dept 2022]). In our view, the position advocated by the dissent cannot be reconciled with Thorne. Here, the deficiencies in the appeal waiver colloquy are strikingly similar as the court never asked defendant if he agreed to sign the form, let alone if he read it, understood it or even discussed its contents with counsel. Instead, the court merely asked defense counsel if defendant signed the waiver form. The dissent, citing People v Bryant, states that the appeal waiver met the holistic approach advanced by the Court of Appeals. However, while the written waiver form here may have used the very same words as that in Bryant, the plea court's colloquy was markedly deficient in the aggregate. First, the plea court in Bryant directly allocuted the defendant on the written waiver form by asking "[t]here is a document entitled waiver of appeal. I see that you executed that document. Do you have any questions about it?" to which the defendant replied "No" (Bryant, 28 NY3d at 1096). Rather, here the court relied on defense counsel's responses regarding the execution of the written waiver form. Moreover, in Bryant, the plea court further clarified the finality of defendant's written waiver by noting that "some residual rights remain" (id.). In contrast, here, the court never discussed defendant's residual rights (i.e., four issues that survive a waiver of appeal, namely: a constitutional speedy trial claim; a challenge to the legality of the sentence; issues of defendant's competency to stand trial; and the voluntariness of the appeal waiver) but merely told defendant that by waiving his right to appeal "[t]hat means that this plea of guilty and the sentence will be final." These and other errors render defendant's appeal waiver incomparable to that presented in Bryant.
Finally, absent "on-the-record acknowledgements of [defendant's clear] understanding" (Thomas, 34 NY3d at 560) of his appellate rights waiver, the presumption of defense counsel's competent representation during the plea negotiations is simply insufficient to overcome the court's deficient colloquy (id.). Accordingly, we find that this waiver of appeal is invalid and therefore does not foreclose review of defendant's underlying suppression claims.
The court properly denied defendant's motion for a Mapp/Dunaway hearing. A court may summarily deny a [*3]motion to suppress if "[t]he sworn allegations of fact do not as a matter of law support the ground alleged" (CPL 710.60[3][b]). "[C]onclusory allegations of a general constitutional violation or lack of probable cause are of no avail in meeting the statutory requirements for entitlement to a hearing" (People v Jones, 95 NY2d 721, 726 [2001], citing People v Mendoza, 82 NY2d 415, 431 [1993]). Here, defendant was not entitled to a hearing based on his conclusory assertions that the search and seizure violated his federal and state constitutional rights or that he was arrested without probable cause.
However, the court should not have denied defendant's motion to controvert the search warrant sua sponte due to lack of standing. Where a defendant seeks to suppress evidence on the grounds that it was obtained by means of an illegal search, they "must allege standing to challenge the search and, if the allegation is disputed, must establish standing" (People v Carter, 86 NY2d 721, 723 [1995] [emphasis added]). Here, the People never disputed that defendant had standing to challenge the search warrant. Therefore, the court should not have denied the motion "based on a ground not raised by the People" (People v Hatchett, 196 AD3d 431, 431 [1st Dept 2021]). Furthermore, the People's current arguments on appeal are precluded by People v LaFontaine (92 NY2d 470, 474 [1998]) because the suppression court did not rule upon these issues, and this Court may not affirm on those alternative grounds (see People v Holmes, 170 AD3d 532, 533 [1st Dept 2019]).
All concur except Mazzarelli, J. who dissents in a memorandum
as follows:

MAZZARELLI, J. (dissenting).
 

A waiver of the right to appeal is enforceable "so long as the totality of the circumstances reveals that the defendant understood the nature of the appellate rights being waived" (People v Thomas, 34 NY3d 545, 559 [2019], cert denied 589 US __, 140 S Ct 2634 [2020]). Thus, the Court of Appeals "has not . . . set forth the absolute minimum that must be conveyed to a pleading defendant in the plea colloquy in order for the right to appeal to be validly waived" (People v Sanders, 25 NY3d 337, 341 [2015]). Nor must a trial court "engage in any particular litany when apprising a defendant pleading guilty" of the implication of his waiver of an appeal (People v Lopez, 6 NY3d 248, 256 [2006]).
The majority engages in an analysis of the plea allocution in this case that is narrowly focused on the particulars of the exchange between the court, counsel and defendant, instead of applying the holistic approach favored by the Court of Appeals, which is most concerned with whether, at bottom, the defendant waived his appellate rights knowingly, intelligently, and voluntarily (id.). The allocution here met that standard. Indeed, the allocution included precisely all of the elements that were found by the Court of Appeals in People v Bryant (28 NY3d 1094 [2016]) to have resulted in a valid waiver. First, the [*4]court turned to defendant's waiver of appeal only after it first reviewed the other rights that defendant was forfeiting by pleading guilty. Second, it secured defendant's verbal confirmation that he was waiving his right to appeal. Finally, the verbal confirmation was accompanied by a written waiver that used the very same words as were found by the Court of Appeals in Bryant to have underscored the knowingness of the defendant's waiver; i.e., that the right to appeal is separate and
distinct from other rights automatically forfeited upon a plea of guilty" (id. at 1096 [internal quotation marks omitted]). Accordingly, the waiver overcame any ambiguity in the trial court's colloquy (see People v Rodriguez, 136 AD3d 549 [1st Dept 2016], lv denied 27 NY3d 1138 [2016]).
The majority states that the court "conflated" defendant's appellate and trial rights. To the contrary, the court clearly delineated between the two:
"The Court: By pleading guilty you are giving up some rights. You are giving up your right to remain silent in this case. You are giving up your right to suppress evidence. You are giving up your right to go to trial, to confront and cross examine witnesses at a trial and to testify on your own behalf and present a defense. Do you understand that?
"The Defendant: Yes.
"The Court: You also would appeal this plea of any subsequent sentence, but by entering this plea, this plea of guilty on the condition that you will receive a reduced sentence of three years probation you're agreeing to give up your right to appeal this promise as a benefit to us because normally probation is five years and you are going to be sentenced to a three-year period of probation."
This was consistent with the waiver that the Court of Appeals upheld in People v Nicholson, one of the companion cases to People v Lopez (6 NY3d at 248), observing that "the trial court engaged in a fuller colloquy, describing the nature of the right being waived without lumping that right into the panoply of trial rights automatically forfeited upon pleading guilty and eliciting agreements of understanding from the defendant on multiple occasions" (6 NY3d at 257). Notably, the waiver in Nicholson was not even supported by the "even better" practice of a written waiver, which defendant here did execute, and which explicitly delineated between the two separate sets of rights. Considering the manner in which the court secured defendant's understanding that his appeal rights were separate and distinct from his trial rights, I disagree with the majority's conclusion that the trial court's confirmatory inquiry into whether defendant wished "to waive your right to appeal and your other rights" was sufficient to undo the waiver. Nor did the court's expressions of confusion about the precise sentence being offered to defendant suggest that defendant did not understand that his waiver of his right to appeal was a quid pro quo for a sentence that was more favorable than the one he would [*5]have received had he proceeded to trial.
I also disagree with the majority that the court failed to adequately apprise defendant of the significance of the right he was waiving. Unlike People v Harris (137 AD3d 514 [1st Dept 2016], lv denied 27 NY3d 1040 [2016]), in which "the Court never advised defendant of the consequences of the appeal waiver, or spoke to defendant to ensure he understood the rights he was forfeiting by signing the waiver," the context here, where the court explicitly explained that by sacrificing his right to appeal defendant was gaining a significant reduction in his sentence, adequately conveyed the value of the right. Further, the dissent does not take into account that, "in determining whether the record demonstrates that a defendant understood an appeal waiver's consequences, proper considerations include the defendant's consultation with counsel and on-the-record acknowledgments of understanding, a written appeal waiver that supplements or clarifies the court's oral advice and the defendant's experience with the criminal justice system" (People v Thomas, 34 NY3d at 560). Defense counsel here represented to the trial court that the waiver of appeal was acceptable to defendant, that he and defendant together executed the written waiver of appeal, and that defendant had authorized him to enter a guilty plea in exchange for the promised sentence, "and of course, with the understanding of waiver of Right to Appeal." There is a presumption that counsel provided competent representation during plea negotiations (id., citing Lafler v Cooper, 506 US 156 [2012]), and nothing in this record rebuts that presumption. Unlike People v Thorne (207 AD3d 73 [1st Dept 2022]), cited by the majority, in which the record suggests the defendant was seeing the written waiver form for the first time during the plea allocution, here counsel represented during the allocution that "we have executed the waiver of [a]ppeal." This strongly suggests that he and his client had an opportunity to review it and discuss it before the allocution even took place.
The majority maintains that the allocution here was of a markedly inferior quality compared to the brief allocution upheld by the Court of Appeals in Bryant. I disagree. The only substantive difference between the allocution here and the Bryant allocution, which was not, by any means, fulsome, was the latter's reference to the "residual rights" that the appeal waiver does not affect (28 NY2d at 1096). However, the failure of the court to refer to those rights constitutes, at worst, the use of "imprecise and overbroad" language, which should not serve to invalidate the entire waiver in light of the overall context, including the written waiver, which did delineate those rights (People v Thomas, 34 NY3d at 559). The Court of Appeals has "drawn the line and held appeal waivers unenforceable where the court's advisement as to the rights relinquished was incorrect and irredeemable under the circumstances[*6]" (id. at 562). For the reasons explained herein,
the allocution here undoubtedly cleared that bar. Accordingly, I would not have reached the suppression issues raised by defendant.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 22, 2022